<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
LAMBERT BAGUIDY,             :
                           : Civil Action No. 12-4635 (FLW)
            Petitioner,     :
                           :
           v.                  :       **O P I N I O N**
                           :
BRIAN ELWOOD, et al.,      :
                           :
           Respondents.    :
_____:

**APPEARANCES:**

      LAMBERT BAGUIDY, Petitioner, <u>Pro Se</u>
      # 044-592-999
      Monmouth County Correctional Institution
      1 Waterworks Road
      Freehold, New Jersey 07728

      KRISTIN LYNN VASSALLO, ESQ.
      OFFICE OF THE U.S. ATTORNEY
      970 Broad Street, 7th Floor
      Newark, New Jersey 07102
      Counsel for Respondents

**WOLFSON, District Judge**

      Petitioner, Lambert Baguidy[1] ("Petitioner"), is currently

being detained by the Department of Homeland Security,

Immigration and Customs Enforcement ("DHS/ICE") at the Monmouth

County Correctional Institution in Freehold, New Jersey, pending

_____

      [1] It would appear from the Government's answer to the
petition, that Petitioner's name is actually Baguidy Lambert as
listed in his immigration file. In addition, Petitioner's
signature on his petition is Baguidy Lambert. Accordingly, the
Court will direct the Clerk to correct the docket to reflect
Petitioner's name as Baguidy Lambert.

his removal from the United States.[2]  On or about July 25, 2012, Petitioner filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his pre-removal period mandatory detention under 8 U.S.C. § 1226(c).  Petitioner paid the $5.00 filing fee.  With his petition, Petitioner also filed an application for an Order to Show Cause and for appointment of counsel.[3]  Petitioner brings this action against Brian Elwood, Warden at Monmouth County Correctional Institution; Christopher Shanahan, New York Field Office Director for Detention and Removal; John T. Morton, Assistant Secretary of the United State Immigration and Customs Enforcement ("ICE"); Janet Napolitano, Secretary of the DHS; and Eric Holder, Jr., United States Attorney General, as the named party respondents (hereinafter referred to as "the Government") in this action.

The Government provided a response to the petition on or about September 4, 2012, together with the relevant record.

_____

[2]  Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Immigration and Customs Enforcement agency ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

[3]  This Court denied without prejudice Petitioner's application for appointment of counsel by Order issued on August 2, 2012.  (Docket entry no. 3).  In that same Order, the Court directed respondents to answer the petition.

(Docket entry no. 8).  Petitioner has not filed a reply or traverse at this time.  For the reasons stated below, this Court holds that Petitioner's detention is governed by 8 U.S.C. § 1226(a), and grants this petition for habeas relief directing the Immigration Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2), to determine if Petitioner is a flight risk or danger to the community.

I.  BACKGROUND

Petitioner states that he is a native and citizen of Haiti, who was admitted to the United States as a lawful permanent resident on November 20, 1994, at the age of 14 years old.  He was taken into criminal custody for a removable offense on March 1, 2001, and was released on June 1, 2001.[4]  Over nine years later, on January 19, 2011, Petitioner was taken into DHS/ICE custody pending removal proceedings.  He has been detained for more than 18 months when he filed this habeas petition on or about July 25, 2012.  Petitioner alleges that he has not received

_____

[4]  Petitioner does not identify the crime for which he was arrested; however, in the Notice to Appear he attached to his petition, it shows that Petitioner was taken into custody for removal proceedings based on his New York state conviction for attempted criminal sale of a controlled dangerous substance in the third degree, in which a judgment of conviction was entered on June 10, 2004.

3

any custody hearings during this time period.  (Petition, pp. 2-5, 12, 14-15).[5]

On September 4, 2012, the Government answered the petition providing the relevant immigration records.  The Government confirms that, on June 11, 2001, Petitioner was convicted in a New York state court on a charge of attempted criminal possession of a controlled substance (cocaine) in the third degree.  He was sentenced to probation.  On June 10, 2004, the New York state court re-sentenced Petitioner to four months in prison for violating his probation.  (Declaration of Joanna Delgado ["Delgado Decl."] at ¶ 5, Exhibit A).

On July 7, 2003, Petitioner was convicted in Bronx County Criminal Court of criminal possession of marijuana in the fifth degree, and resisting arrest.  He was sentenced to 30 days in prison.  (Delgado Decl., ¶ 6).  On September 9, 2008, Petitioner was arrested on charges of menacing in the second degree, criminal possession of a weapon in the fourth degree, and criminal trespass in the third degree.  On November 10, 2008, Petitioner was convicted in New York Supreme Court, Bronx County,

---

[5]  A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

of a general violation of local law, and was sentenced to a conditional discharge with an order of protection issued against him.  (Delgado Decl., ¶ 7).

On December 7, 2010, Petitioner was arrested for assault in the third degree.  One week later, on December 13, 2010, a DHS/ICE officer encountered Petitioner at the Rikers Island Correctional Facility in New York.  Accordingly, on January 19, 2011, the ICE took Petitioner into custody from Rikers Island.  (Delgado Decl., ¶¶ 8-10, Ex. C (Notice of Custody Determination)).

On January 21, 2011, the DHS/ICE placed Petitioner in removal proceedings at New York, New York, pursuant to the service and filing of a Notice to Appear ("NTA").  (Delgado Decl., ¶ 10, Ex. B).  The NTA alleged that Petitioner was convicted of attempted criminal sale of a controlled substance in the third degree and charged Petitioner with removability under Sections 237(a)(2)(B)(i)(controlled substance violation) and 237(a)(2)(A)(iii)(aggravated felony drug trafficking and attempt conviction) of the Immigration and Nationality Act ("INA").  (Id.).  The DHS/ICE later amended the NTA to correctly cite the correct charge of criminal possession of a controlled substance in the third degree.  (Delgado Decl., ¶ 19, Ex. D (Form I-261)).

Petitioner first appeared before an Immigration Judge on February 10, 2011, but the proceeding was adjourned to March 10,

5

2011, to allow Petitioner to obtain counsel.  The March 10, 2011 proceeding also was adjourned to April 15, 2011, to allow Petitioner more time to obtain legal representation.  (Delgado Decl., ¶¶ 11, 12).  Finally, on April 15, 2011, Petitioner appeared pro se before the Immigration Judge, and the proceeding went forward at that time.  The Immigration Judge sustained the allegations and removability charge pursuant to INA § 237(a)(2)(B)(i)(controlled substance violation) only.  The Immigration Judge adjourned the proceeding to May 31, 2011 to allow Petitioner to file an application for relief.  (Delgado Decl., ¶ 13).

On May 31, 2011, Petitioner appeared before the Immigration Judge and filed his application for relief.  The Immigration Judge adjourned the proceeding to July 6, 2011, to allow Petitioner time to prepare his case.  (Delgado Decl., ¶ 14).  The proceeding was adjourned again on July 6, 2011, to August 17, 2011, to allow Petitioner to supplement his application for relief.  (Id., ¶ 15).  On August 17, 2011, Petitioner appeared pro se before the Immigration Judge and requested a further adjournment so that he could pursue a collateral appeal of his state court conviction giving rise to his removability.  The Judge denied the adjournment on this ground, but did adjourn the proceeding to November 10, 2011 for a merits hearing on Petitioner's application for relief and to allow Petitioner to

complete the required paperwork for a biometric check.  (Id., ¶ 16).  The proceeding again was adjourned from November 10, 2011 to February 13, 2012.  (Id., ¶ 17).

Petitioner appeared pro se before the Immigration Judge on February 13, 2012, and testified on behalf of his application for relief.  The Immigration Judge then adjourned the proceeding to April 11, 2012, to render a decision and for the DHS/ICE to file a Form I-261, Additional Charges of Inadmissibility/Deportability.  The DHS/ICE filed a Form I-261 on February 13, 2012, amending to include Petitioner's 2004 conviction.  (Delgado Decl., ¶¶ 18, 19; Ex. C).

On April 11, 2012, Petitioner appeared pro se before the Immigration Judge and admitted the allegations contained in the Form I-261, but requested an adjournment so as to pursue a collateral appeal of his 2004 conviction.  (Delgado Decl., ¶20). Over the DHS/ICE's objections, the Immigration Judge adjourned the proceeding to June 6, 2012 for a decision and outcome of Petitioner's collateral appeal of his 2004 conviction.  (Id.).

On June 6, 2012, the Immigration Judge issued a decision denying Petitioner's application for relief, and ordered Petitioner removed to Haiti pursuant INA § 237(a)(2)(B)(i) only (controlled substance violation).[6]  Petitioner reserved his right

---

[6]  The Immigration Judge found that the Government had not sustained its burden on the charge of Petitioner's removability under INA § 237(a)(2)(A)(iii)(aggravated felony drug trafficking and attempt conviction).  (Delgado Decl., Ex. E).

7

to file an appeal with the Board of Immigration Appeals ("BIA"). (Id., ¶ 21; Ex. E, Decision and Order of IJ).

On June 25, 2012, Petitioner filed a notice of appeal with the BIA. (Id., ¶ 22; Ex. F). On August 27, 2012, the BIA issued a decision dismissing Petitioner's appeal to the extent that it denied his applications for relief, and remanded the proceedings to the Immigration Judge to consider any application by Petitioner for voluntary departure. (Id., ¶ 23; Ex. G, Decision and Order of BIA).

The Government contends that Petitioner remains in DHS/ICE custody at the Monmouth County Correctional Institution, pursuant to 8 U.S.C. § 1226(c). (Delgado Decl., ¶ 3). There appears to be no dispute that Petitioner is still in his pre-removal period detention, as the BIA remanded the matter to the Immigration Judge.

## II. DISCUSSION

The question in this case is narrow: whether 8 U.S.C. § 1226(c) requires the DHS/ICE to mandatorily detain Petitioner pending a final decision on his removal where the DHS/ICE did not take him into custody when he was released from criminal incarceration for the offense underlying his removal, but instead waited for nine years to take him into custody.[7] The Government

_____

[7] The issue is pending before the Third Circuit in Sylvain v. Holder, C.A. No. 11-3357 (3d Cir. docketed Aug. 31, 2011)(DHS appealed Judge Pisano's order granting habeas relief and ordering a bond hearing), and Desrosiers v. Hendricks, C.A. No. 12-1053 (3d Cir. docketed Jan. 11, 2012)(petitioner's appeal of Judge

argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's reading of § 1226(c) in Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001), that mandatory pre-removal period detention applies to any alien who was released from criminal incarceration at any time after October 8, 1998, for a specified offense underlying the removal, regardless of how long the alien lived in the community after release.[8]  Petitioner argues that the statutory command that the DHS/ICE "shall take into custody any alien ... when the alien is released" does not include Petitioner because the DHS/ICE did not take him into custody when he was released in 2001 from criminal custody for the specified removable offense, but waited for nine years to take him into custody on January 19, 2011.

A.  Jurisdiction

    Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter

_____

Hochberg's order denying habeas relief), but argument has not been scheduled in either appeal.

    [8]  The Government also argues that Christopher Shanahan, John T. Morton, Janet Napolitano, and Eric Holder, Jr., should be dismissed from this action because they are not proper party respondents.  The Government correctly contends that the only proper respondent to this petition is Warden Elwood because he is the individual who has custody over Petitioner.  See 28 U.S.C. § 2243; Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).

jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS/ICE at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c).  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F.3d 221, 226 (3d Cir. 2011).

B.   Statutory Framework for Detention During Removal Proceedings

Section 1226 governs the pre-removal-period detention of an alien.  Section 1226(a) authorizes the Attorney General to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a). Section 1226(a) authorizes the Attorney General to release an alien on bond, pending a decision as to whether that alien is to be removed, "except as provided in subsection (c)."  Id.  The exception in § 1226(c) commands that the Attorney General "shall take into custody any alien ... when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether

the alien may be arrested or imprisoned again for the same
offense." 8 U.S.C. § 1226(c)(1).  An alien detained under
§ 1226(c) must be detained until his removal is final, regardless
of whether he is a flight risk or danger to the community, unless
the Attorney General determines that the alien should be part of
the federal witness protection program, provided detention has
not become unreasonably prolonged.  See Diop v. ICE/Homeland
Sec., 656 F.3d at 232 ("At a certain point, continued detention
becomes unreasonable and the Executive Branch's implementation of
§ 1226(c) becomes unconstitutional unless the Government has
justified its actions at a hearing inquiring into whether
continued detention is consistent with the law's purposes of
preventing flight and dangers to the community").  Section 1226
provides in full:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be
> arrested and detained pending a decision on whether the
> alien is to be removed from the United States.  Except as
> provided in subsection (c) of this section and pending such
> decision, the Attorney General—
>     (1) may continue to detain the arrested alien; and
>     (2) may release the alien on—
>         (A) bond of at least $1,500.; or
>         (B) conditional parole; but
>     (3) may not provide the alien with work authorization
>     ... unless the alien is lawfully admitted for permanent
>     residence or otherwise would ... be provided such
>     authorization.
>
> (b) Revocation of bond or parole
> The Attorney General at any time may revoke a bond or parole
> authorized under subsection (a) of this section, rearrest
> the alien under the original warrant, and detain the alien.
>
> (c) Detention of criminal aliens

(1) Custody
The Attorney General shall take into custody any alien who—
  (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
  (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
  (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
  (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
(2) Release
The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

    In this case, since Petitioner's detention has not yet become prolonged,[9] see Diop at 232, the outcome of this case

_____

    [9]  To the extent that Petitioner may argue that his detention has been prolonged, the delays in his removal proceedings were actuated by his repeated requests for adjournments.  See this Opinion, supra, I. Background, at pp. 6-

depends on the meaning of the following words in § 1226(c)(1): "The Attorney General shall take into custody any alien [specified in this section], when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1).  The Government argues that this language mandates Petitioner's detention beginning on January 19, 2011, because he was released from criminal incarceration for a removable conviction listed in § 1226(c) in 2001, even though Petitioner has lived in the community for years.[10]  Specifically, the Government argues that this Court should defer under <u>Chevron</u> to the BIA's interpretation of § 1226(c) in <u>Matter of Rojas</u>, 23 I. & N. Dec. 117 (BIA 2001), because the statutory language is ambiguous and it is reasonable to read "when the alien is released" to mean "any time after the alien is released."

Moreover, the Government asks this Court to depart from its prior rulings regarding the interpretation of § 1226(c) in <u>Kot v. Elwood</u>, Civil No. 12-1720 (FLW), 2012 WL 1565438, at *5-9 (D.N.J.

---

7.  Nevertheless, this argument presupposes that Petitioner is detained pursuant to § 1226(c), which this Court finds he is not, and therefore, the length of his detention is unfortunately irrelevant at this stage.

[10]  The factual history shows that Petitioner was taken into custody on January 19, 2011, while he was confined at Rikers Island for an arrest that did not relate to his removable offense.

May 2, 2012) and <u>Christie v. Elwood</u>, Civil No. 11-7070 (FLW),
2012 WL 266454, at *7-9 (D.N.J. Jan. 30, 2012), to consider a
recent decision issued by the United States Court of Appeals for
the Fourth Circuit in <u>Hosh v. Lucero</u>, 680 F.3d 375 (4th Cir.
2012).  In <u>Hosh</u>, the Fourth Circuit found the language in
§ 1226(c) to be ambiguous, namely, that the word "when" has
different meanings, and therefore, it is unlikely that "when
released" means "at the moment of release, and not later."  Thus,
the Fourth Circuit deferred to the BIA's interpretation of the
statute and ruled that the mandatory detention applied to aliens
with qualifying convictions even if there was a gap between their
criminal and immigration custody.  <u>Hosh</u>, 680 F.3d at 380-81.

    *(1) The BIA's Holding in <u>Matter of Rojas</u>*

    <u>Matter of Rojas</u> involved the alien's appeal to the BIA of
the Immigration Judge's rejection of the argument that Rojas was
not subject to mandatory detention under § 1226(c)(1) because the
government failed to apprehend him at the time of his release
from incarceration on parole for an offense covered by § 1226(c),
and instead waited two days before taking him into custody.  <u>See
Matter of Rojas</u>, 23 I. & N. Dec. 117.  First, the BIA determined
that the language in § 1226(c)(1) is not clear, but is
susceptible to different readings.  <u>Id</u>. at 120.  The BIA stated
that, although "[t]he statute does direct the Attorney General to
take custody of aliens immediately upon their release from
criminal confinement ... Congress was not simply concerned with

14

detaining and removing aliens coming directly out of criminal

custody; it was concerned with detaining and removing *all*

criminal aliens."   Id. at 122.  The BIA

> construe[d] the phrasing "an alien described in paragraph
> (1)," as including only those aliens described in
> subparagraphs (A) through (D) of section [1226(c)(1) ], and
> as not including the "when released" clause.  Our
> interpretation is derived from the natural meaning of the
> statutory language, from the object and design of the
> statute as a whole, and from the history of the mandatory
> detention provisions.  It is reinforced by practical
> concerns that would otherwise arise.

Matter of Rojas, 23 I. & N. Dec. at 125.

The BIA held that Rojas "is subject to mandatory detention

pursuant to section [1226(c) ], despite the fact that he was not

taken into Service custody immediately upon his release from

state custody."  Matter of Rojas, 23 I. & N. Dec. at 127.  Board

member Lory Diana Rosenberg wrote a dissenting opinion in which

six board members joined.  Board member Rosenberg opined:

> The word "'when' [is defined] as 'just after the moment
> that.'"  Alikhani v. Fasano, 70 F. Supp.2d 1124, 1130
> (S.D.Cal.1999)(quoting *Webster's Third New International
> Dictionary* 2602 (3d ed. 1976).  Therefore, as one court
> noted, the clear language of the statute requires that "the
> mandatory detention of aliens 'when' they are released
> requires that they be detained at the time of release."
> Alikhani v. Fasano, supra, at 1130; see also Velasquez v.
> Reno, 37 F. Supp.2d 663, 672 (D.N.J. 1999)("This court
> cannot simply ignore the plain language of the statute which
> provides that an alien is to be taken into custody 'when the
> alien is released.'").  As another court noted, "Congress
> could have required custody 'regardless of when the alien is
> released' or 'at any time after the alien is released,' "but
> did not do so.  Alwaday v. Beebe, 43 F. Supp.2d 1130, 1133
> (D.Or. 1999) ....  These courts have concluded uniformly
> that "[t]he plain meaning of this language is that it
> applies immediately after release from incarceration, not to

15

aliens released many year [s] earlier." <u>Pastor-Camarena v. Smith</u>, <u>supra</u>, at 1417-18.

<u>Matter of Rojas</u>, 23 I. & N. Dec. at 132-33 (Rosenberg, dissenting).[11]

The dissenting opinion of Board Member Rosenberg concluded:

The stretch of interpretation required by the majority's construction is not supported by the plain language of the statute and is unreasonable. The aliens described in paragraph (1) of section [1226(c) ] are the ones who are deemed to be inadmissible and deportable for the cited violations and taken into custody when they are released from criminal incarceration. These are the aliens described in paragraph (2) as the ones who may not be released.

The interpretation I reach from a straightforward reading of the plain language of the statute would allow for a hearing when an individual alien, such as this respondent, has already been released into the community, and it would authorize the detention of such individuals where warranted following an individualized hearing.

<u>Matter of Rojas</u>, 23 I. & N. Dec. at 139 (Rosenberg, dissenting).

*(2) Chevron Deference Not Required As To Rojas*

If "Congress has directly spoken to the precise question at issue," a court and an agency "must give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842-43. In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of

---

[11] The <u>Velasquez</u> opinion cited in the dissenting opinion of Board Member Rosenberg was written by then New Jersey District Judge, now Third Circuit Court of Appeals Judge (Senior), Maryanne Trump Barry.

statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987)(quoting Chevron, 467 U.S. at 843 n. 9). Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, (2004).

The Government acknowledges that the undersigned has twice rejected the Government's argument that § 1226(c) is ambiguous.[12] See Kot v. Elwood, 2012 WL 1565438 (D.N.J. May 2, 2012); Christie v. Elwood, 2012 WL 266454 (D.N.J. Jan. 30, 2012). In Christie, this Court found:

> Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from the removable offense enumerated in § 1226(c). Because the plain language of the statute commands that an alien is to be taken into custody "when the alien is released," this Court may not defer to the BIA's re-writing of the statute. Because the Attorney General did not take Harold Christie into custody when he was released from criminal incarceration for a removable offense in 1999, but allowed him to live in the community for 12 years before taking him into custody in September 2011, Christie is not subject to the mandatory detention exception in § 1226(c)(1). Christie's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to

---

[12] This Court again rejected a similar argument by the Government recently in Nimako v. Shanahan, 2012 WL 4121102 *6 (D.N.J. Sept. 18, 2012). The Government's answer to this petition was filed on September 4, 2012, predating this Court's Opinion in Nimako.

release him on bond if the Immigration Judge finds that he is neither a flight risk nor a danger to the community.

Christie at *9 (citation and internal quotation marks omitted).

The Government now argues that this Court should reconsider the issue in light of the Fourth Circuit's May 25, 2012 decision in Hosh v. Lucero, 680 F.3d 375 (4th Cir. 2012).  Based on the following analysis, the Fourth Circuit held that § 1226(c) is ambiguous:

> The meaning of § 1226(c) is not plain to us.  To be sure, "when in § 1226(c) can be read, on one hand, to refer to "action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun."  Waffi v. Loiselle, 527 F. Supp.2d 480, 488 (E.D.Va. 2007)(citing *The Oxford English Dictionary* 209 (2d ed. 1989); *The American Heritage Dictionary of the English Language* (4th ed. 2000)).  On the other hand, "when" can also be read to mean the temporally broader "at or during the time that," "while," or "at any or every time that ...."  *Free Merriam-Webster Dictionary,* available at http:// www.merriamwebster.com/dictionary/ when (last visited April 30, 2012).  We must therefore consider the BIA's interpretation.

Hosh, 680 F.3d at 379-80.

The Fourth Circuit deferred to the BIA's interpretation of the statute in Rojas because the interpretation was not "'arbitrary, capricious, or manifestly contrary to the statute.'" Hosh, 680 F.3d at 378 (quoting Chevron, 467 U.S. at 844).

This Court notes, however, that no District Court (outside the Fourth Circuit) post Hosh has been persuaded to follow the Fourth Circuit's analysis in Hosh.[13]  See Charles v. Shanahan,

─────────

[13]  Judge Hochberg deferred to Rojas in a post- Hosh decision, but Judge Hochberg followed her own pre-Hosh holding in Desrosiers v. Hendricks, Civ. No. 11-4643 (FSH) sl. opinion

2012 WL 4794313 *2 (D.N.J. Oct. 9, 2012); Kporlor v. Hendricks,
2012 WL 4900918 *6 (D.N.J. Oct.9, 2012); Campbell v. Elwood, 2012
WL4508160 *3 (D.N.J. Sept. 27, 2012); Martinez v. Muller, 2012 WL
4505895 *3 (D.N.J. Sept. 25, 2012); Cox v. Elwood, 2012 WL
3757171 *4 (D.N.J. Aug. 28, 2012)("This Court is also not
persuaded by the Fourth Circuit's decision in Hosh to defer to
the BIA's interpretation of "when ... released" as it is not
binding authority on this Court....  Until the Third Circuit
decides this issue, this Court will rely on the plain meaning of
§ 1226(c)"); Martial v. Elwood, 2012 WL 3532324 (D.N.J. Aug. 14,
2012)(same); Bogarin-Flores v. Napolitano, 2012 WL 3283287 *3
(S.D.Cal. Aug. 10, 2012)("The Fourth Circuit ... found Rojas was
decided correctly but did not present any independent reasoning
or statutory construction, instead giving deference to the BIA's
decision ....  This Court finds that the plain language of the
statute is not ambiguous and clearly applies the mandatory
detention provision to those aliens who are detained upon release
from criminal custody"); Dimanche v. Tay-Taylor, 2012 WL 3278922
(D.N.J. Aug. 9, 2012); Munoz v. Tay-Taylor, 2012 WL 3229153 *3
(D.N.J. Aug. 6, 2012)("This Court is also not persuaded by the
Fourth Circuit's decision in Hosh to defer to the BIA's
interpretation"); Gonzalez-Ramirez v. Napolitano, 2012 WL 3133873

---

(D.N.J. Dec. 30, 2011), one of the cases pending before the Third
Circuit.  See Espinoza-Loor v. Holder, 2012 WL 2951642 (D.N.J.
July 2, 2012)(No. 11-6993(FSH)).

n. 8 (D.N.J. July 30, 2012)("The Court recognizes the recent decision by the Court of Appeals for the Fourth Circuit .... Absent a directive from the Third Circuit, the Court respectfully declines to adopt the Hosh holding and will instead follow the reasoning utilized by the First Circuit in Saysana").

The Court joins these above-cited district courts in finding that Hosh is not persuasive.  Rather, the Court has found in its Christie and Kot rulings, as well as in its most recent ruling in Nimako, supra (in which this Court declined to adopt the Hosh holding), that the First Circuit's rationale and holding in Saysana v. Gillen, 590 F.3d 7 (1st Cir. 2009), comport with this Court's reading of the statute.  Indeed, the Government wholly overlooks the First Circuit's reasoning in Saysana, which expressly, and persuasively, held that the "when the alien is released" language in 1226(c) is clear: "We have concluded that the text of the statute is clear.  Consequently, because the 'when released' language is unambiguous, there is nothing for the agency to interpret—no gap for it to fill—and there is no justification for resorting to agency interpretation to address an ambiguity." Saysana, 590 F.3d at 16.  The Government's argument also disregards the consistency in this Court's and Saysana's reading of § 1226(c) as clearly envisioning a continuous chain of custody of dangerous aliens: "The Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an

alien had been released from state custody." <u>Saysana</u>, 590 F.3d at
16 (quoting <u>Quezada-Bucio v. Ridge</u>, 317 F. Supp.2d 1221, 1230
(W.D.Wash. 2004)).  In fact, <u>Saysana</u> expressly rejected the
Government's contention that the BIA's reading of
§ 1226(c) is "consistent with Congress'[s] longstanding intent to
detain certain criminal aliens," instead finding that "the 'when
released' language serves this more limited but focused purpose
of preventing the return to the community of those released in
connection with the enumerated offenses, as opposed to the
amorphous purpose the Government advances." <u>Id</u>. at 17.[14]  And
the First Circuit recognized that, by definition, aliens who have
lived in the community for years after release from criminal
incarceration are those who are among the least likely to pose a
flight risk or danger to the community, the presumed reasons for
mandatory detention.  <u>See Saysana</u>, 590 F.3d at 17-18 ("By any
logic, it stands to reason that the more remote in time a
conviction becomes and the more time after a conviction an
individual spends in a community, the lower his bail risk is
likely to be").

More importantly, the Government's argument in this respect
disregards that, in <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221 (3d

---

[14]   <u>See also Saysana</u>, 590 F.3d at 13 ("The statutory
language embodies the judgment of Congress that such an
individual should not be returned to the community pending
disposition of his removal proceedings. Both the language and the
structure of the statutory provision state this mandate in a
clear and straightforward manner").

Cir. 2011), the Third Circuit also read § 1226(c) as envisioning a continuous chain of custody of criminal aliens.  In Diop, the Third Circuit noted that in enacting § 1226(c), "Congress was concerned with the immigration authorities' 'wholesale failure' to 'deal with the increasing rates of criminal activity by aliens.'  Section 1226(c) was intended to remedy this perceived problem by ensuring that aliens convicted of certain crimes would be present in their removal proceedings and not on the loose in their communities, where they might pose a danger."  Id. at 231 (quoting Demore v. Kim, 538 U.S. 510 (2003)).  As such, the Third Circuit's concerns are consistent with those of Saysana.

Finally, while the BIA and Hosh rely on dictionary definitions of the word "when," they do not fit the dictionary definitions into the language used in § 1226(c).  In other words, neither BIA nor the Fourth Circuit explains how the words "The Attorney General shall take into custody any alien ... when the alien is released" can be read to state that "The Attorney General shall take into custody any alien ... any time after the alien is released."  Indeed, given the dearth of analysis in Hosh, the Government has not persuaded this Court to follow the reasoning of the Fourth Circuit.  Particularly when the Court finds that the statutory language of § 1226(c) is unambiguous.  In that regard, like many courts in this district, the Court finds that "[a]bsent a directive from the Third Circuit, th[is] Court respectfully declines to adopt the Hosh holding and will

22

instead follow the reasoning utilized by the First Circuit in Saysana." Gonzalez-Ramirez v. Napolitano, 2012 WL 3133873 at n. 8.

Moreover, to the extent that the Government is concerned that this Court's prior rulings serve to strip from the DHS/ICE the power to act against criminal aliens and impose a sanction on the DHS/ICE if it does act within a certain defined but short time after the alien is released from criminal incarceration, the concern is not supported by statute. The DHS/ICE is not stripped of its power to detain dangerous criminal aliens, since these aliens can still be detained under § 1226(a). As this Court explained in Kot,

> If this Court holds that Kot is not subject to mandatory detention under § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration, but waited for 12 years, then it does not follow that Kot must be released. Rather, such a ruling means that the Immigration Judge will conduct a bond hearing, pursuant to 8 U.S.C. § 1226(a), and Kot will be released only if he poses neither a flight risk nor a danger to the community.

Kot, 2012 WL 1565438 at *8.

As a result, this Court holds that Petitioner is not subject to the mandatory detention exception in § 1226(c) because the DHS/ICE did not take him into custody when he was released from criminal incarceration for the specified removable offense in 2001, but allowed him to live in the community for nine years before taking him into custody in January 2011. Petitioner's pre-removal-period detention is governed by 8 U.S.C. § 1226(a),

which authorizes the Immigration Judge to release him on bond if he is neither a flight risk nor a danger to the community.

The Court acknowledges the Government's recitation of Petitioner's criminal history since his 2001 removable offense. However, none of those arrests or convictions were noticed or sustained as removable offenses.  Accordingly, these arrests and two convictions do not support mandatory detention under § 1226(c), but rather, they likely would be considered by the Immigration Judge with respect to Petitioner's bond hearing.

Therefore, this Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community, within 10 days of the date of the entry of the Order accompanying this Opinion.

### III. CONCLUSION

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2). An appropriate Order follows.


s/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge

Dated: November 5, 2012

24